## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JEFF DUFFY, derivatively on behalf of ZION
OIL & GAS, INC.,

      Plaintiff,

      vs.

VICTOR G. CARRILLO, MICHAEL B.
CROSWELL, JR., JOHN M. BROWN,
DUSTIN L. GUINN, FORREST A. GARB,
KENT S. SIEGEL, PAUL OROIAN, WILLIAM
H. AVERY, THE ESTATE OF YEHEZKEL
DRUCKMAN, LEE RUSSELL, JUSTIN W.
FURNACE, GENE SCAMMAHORN, RALPH
F. DEVORE, and MARTIN M. VAN
BRAUMAN,

      Defendants,

      and

ZION OIL & GAS, INC.,

      Nominal Defendant.

C.A. No. _____

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Jeff Duffy ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant, Zion Oil & Gas, Inc. ("Zion" or the "Company"), against certain members of its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties, unjust enrichment, and violations of Section 14(a) of the Securities Exchange Act of 1934.

## NATURE AND SUMMARY OF THE ACTION

1.      Zion is an oil and gas exploration company engaged in oil and gas exploration in Israel.

2.      Beginning March 26, 2018, reports from news outlets and on social media revealed that the Company was the subject of a Securities and Exchange Commission ("SEC") investigation.

3.      Defendants caused the Company to issue repeated unambiguous denials that Zion was being investigated by the SEC.

4.      Then, on July 11, 2018, the Company filed a Form 8-K with the SEC admitting that it was in fact being investigated by the SEC and had received a subpoena to that effect..

5.      Defendants personally made and/or caused the Company to make a series of misleading statements regarding the Company's business, operations, prospects, and legal compliance.  Those statements include: (1) denying that the Company was the subject of an SEC investigation when it was; and (2) asserting that the Company maintained adequate internal controls when it did not.  As a result of the foregoing, the Company's public statements were materially misleading at all relevant times.

6.      Due to Defendants' misconduct, Zion has been harmed.  Among other things, Zion, its former Chief Executive Officer ("CEO"), and its Chief Financial Officer ("CFO") are currently defendants in a federal securities fraud class action pending in the United States District Court for the Northern District of Texas (the "Securities Class Action") and the Company has been forced to expend significant funds on legal and professional services responding to the SEC subpoena and defending against the Securities Class Action.

Additionally, Defendants were improperly over-compensated by the Company and benefitted from the wrongdoing alleged herein.

7.     As detailed below, the majority of Zion's Board is not disinterested and independent.  The Company's CEO and CFO are likely to face liability in the Securities Class Action, and more than half of the outside directors on the Board have longstanding business and personal relationships with each other.  Accordingly, demand is excused because a majority of the Board cannot consider a demand to commence litigation on behalf of the Company in an independent and disinterested fashion.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1) and Rule 14a-9 of the Exchange Act, 17 C.F.R. § 240.14a-9, and raise a federal question pertaining to the claims made in the federal securities class actions based on violations of the Exchange Act.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).  This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

9.     Venue is proper in this District because Zion is incorporated in this District.  In addition, the Defendants have conducted business in this District, and Defendants' actions have had an effect in this District.

## PARTIES

**Plaintiff**

10.     Plaintiff purchased Zion stock in 2011 and has continuously owned his shares since that date.

**Nominal Defendant**

11.     Zion is a Delaware corporation with its principal executive offices at 12655 North Central Expressway, Suite 1000, Dallas, Texas 75243. Zion's shares trade on the NASDAQ Global Market ("NASDAQ") under the ticker symbol "ZN."

**Defendants**

12.     Defendant Victor G. Carrillo ("Carrillo") served as the Company's CEO from June 15, 2015 to September 1, 2018 and as a director from September 2010 to September 1, 2018. According to the Company's proxy statement filed on April 13, 2018 (the "2018 Proxy Statement), as of April 10, 2018, Carrillo beneficially owned 557,193 shares of the Company's common stock.  Given that the price per share of the Company's common stock on April 10, 2018 was approximately $4.54, at the time Carrillo owned over $2.5 million worth of Zion common stock.  For the fiscal year ended December 31, 2017, Carrillo received $448,542 in compensation from the Company, which included $250,000 in salary, $137,000 in option awards, and $61,542 in all other compensation.

13.     Defendant Michael B. Croswell, Jr. ("Croswell") has served as the Company's CFO since August 2016, and has served as a director since May 2017.  According to the 2018 Proxy Statement, as of April 10, 2018, Croswell beneficially owned 414,500 shares of the Company's common stock.  Given that the price per share of the Company's common stock on April 10, 2018 was approximately $4.54, Croswell owned almost $1.9 million worth of Zion common stock.  For the fiscal year ended December 31, 2017, Croswell received $364,749 in compensation from the Company, which included $150,000 in salary, $178,200 in option awards, and $36,549 in all other compensation.

14.     Defendant John M. Brown ("Brown") founded the Company and has served as a director and the Chairman of the Board since Zion's inception in 2000.  Brown has also served as the Company's Executive Chairman since January 2010 and previously served as the Company's CEO twice.  According to the 2018 Proxy Statement, as of April 10, 2018, Brown beneficially owned 1,115,000 shares of the Company's common stock, which represented 1.9% of the Company's total common stock.  Given that the price per share of the Company's common stock on April 10, 2018 was approximately $4.54, Brown owned over $5 million worth of Zion common stock.  For the fiscal year ended December 31, 2017, Brown received $632,419 in compensation from the Company, which included $249,000 in salary, a $30,000 bonus, $239,750 in option awards, and $113,669 in all other compensation.

15.     Defendant Dustin L. Guinn ("Guinn") has served as the Company's Executive Vice Chairman since July 2016, as the Company's President and Chief Operating Officer since September 2016, and as the Company's CEO since August 31, 2018.  He has also served as a Company director since May 2015.  According to the 2018 Proxy Statement, as of April 10, 2018, Guinn beneficially owned 335,000 shares of the Company's common stock. Given that the price per share of the Company's common stock on April 10, 2018 was approximately $4.54, Guinn owned over $1.5 million worth of Zion common stock.  For the fiscal year ended December 31, 2017, Guinn received $465,647 in compensation from the Company, which included $250,000 in salary, $171,500 in option awards, and $44,147 in all other compensation.

16.     Defendant Forrest A. Garb ("Garb") has served as a Company director since November 2005, and serves as Chairman of the Compensation Committee.  According to the 2018 Proxy Statement, as of April 10, 2018, Garb beneficially owned 299,147 shares of the Company's common stock. Given that the price per share of the Company's common stock on

April 10, 2018 was approximately $4.54, Garb owned over $1.3 million worth of Zion common stock.  For the fiscal year ended December 31, 2017, Garb received $68,092 in compensation from the Company, which included $33,000 in fees earned or paid in cash, $29,427 in option awards, and $5,665 in all other compensation.

17.     Defendant Kent S. Siegel ("Siegel") has served as a director since January 2013, and serves as a member of the Audit Committee and the Compensation Committee.  According to the 2018 Proxy Statement, as of April 10, 2018, Siegel beneficially owned 276,000 shares of the Company's common stock.  Given that the price per share of the Company's common stock on April 10, 2018 was approximately $4.54, Siegel owned over $1.2 million worth of Zion common stock.  For the fiscal year ended December 31, 2017, Siegel received $64,765 in compensation from the Company, which included $30,000 in fees earned or paid in cash, $29,427 in option awards, and $5,338 in all other compensation.

18.     Defendant Paul Oroian ("Oroian") has served as a Company director since November 2003 and serves as the Board's Lead Independent Director.   He also serves as Chairman of the Audit Committee and as a member of the Nominating and Corporate Governance Committee.  According to the 2018 Proxy Statement, as of April 10, 2018, Oroian beneficially owned 316,160 shares of the Company's common stock. Given that the price per share of the Company's common stock on April 10, 2018 was approximately $4.54, Oroian owned over $1.4 million worth of Zion common stock.  For the fiscal year ended December 31, 2017, Defendant Oroian received $77,839 in compensation from the Company, which included $42,000 in fees earned or paid in cash, $29,427 in option awards, and $6,412 in all other compensation.

19.     Defendant William H. Avery ("Avery") has served as a director since September 2013, and has been retained as General Counsel on a part time basis under an independent consulting contract since December 2012.  According to the 2018 Proxy Statement, as of April 10, 2018, Avery beneficially owned 677,500 shares of the Company's common stock.  Given that the price per share of the Company's common stock on April 10, 2018 was approximately $4.54, Avery owned over $3 million worth of Zion common stock.  For the fiscal year ended December 31, 2017, Avery received $323,687 in compensation from the Company, which included $18,000 in fees earned or paid in cash, $136,091 in option awards, and $169,596 in all other compensation.

20.     Defendant Lee Russell ("Russell") has served as a Company director since May 2017, and has served as an independent Geoscience Consultant with the Company since August 2012. According to the 2018 Proxy Statement, as of April 10, 2018, Russell beneficially owned 295,000 shares of the Company's common stock.  Given that the price per share of the Company's common stock on April 10, 2018 was approximately $4.54, Russell owned over $1.3 million worth of Zion common stock.  For the fiscal year ended December 31, 2017, Russell received $253,638 in compensation from the Company, which included $12,000 in fees earned or paid in cash, $141,427 in option awards, and $100,211 in all other compensation

21.     Defendant Justin W. Furnace ("Furnace") has served as a Company director since April 2012, and serves as the Chairman of the Nominating and Corporate Governance Committee and as a member of the Compensation Committee.  According to the 2018 Proxy Statement, as of April 10, 2018, Furnace beneficially owned 240,000 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on April 10, 2018 was approximately $4.54, Furnace owned almost $1.1 million worth of

Zion common stock.  For the fiscal year ended December 31, 2017, Furnace received $72,693 in compensation from the Company, which included $39,000 in fees earned or paid in cash, $29,427 in option awards, and $4,265 in all other compensation.

22.     Defendant Gene Scammahorn ("Scammahorn") has served as a Company director since October 2012, and serves as a member of the Nominating and Corporate Governance Committee and as a member of the Audit Committee.  According to the 2018 Proxy Statement, as of April 10, 2018, Scammahorn beneficially owned 241,432 shares of the Company's common stock. Given that the price per share of the Company's common stock on April 10, 2018 was approximately $4.54, Scammahorn owned almost $1.1 million worth of Zion common stock.  For the fiscal year ended December 31, 2017, Scammahorn received $63,566 in compensation from the Company, which included $30,000 in fees earned or paid in cash, $29,427 in option awards, and $4,138 in all other compensation.

23.     Defendant Ralph F. DeVore ("DeVore") served as a Company director from April 2018 to June 2018.  For the fiscal year ended December 31, 2017, DeVore received $52,427 in compensation from the Company, which included $18,000 in fees earned or paid in cash, $29,427 in option awards, and $5,000 in all other compensation.

24.     Defendant Martin M. van Brauman ("van Brauman") has served as a Company director since April 2014, and has served as Corporate Secretary and Treasurer since January 2012 and as Senior Vice President since June 2013.  According to the 2018 Proxy Statement, as of April 10, 2018, van Brauman beneficially owned 432,521 shares of the Company's common stock.  Given that the price per share of the Company's common stock on April 10, 2018 was approximately $4.54, van Brauman owned over $1.9 million worth of Zion common stock. For the fiscal year ended December 31, 2017, van Brauman received $391,375 in compensation from

the Company, which included $18,000 in fees earned or paid in cash, $163,309 in option awards, and $210,066 in all other compensation.

**Defendant the Estate of Yehezkel Druckman**

25.     Yehezkel Druckman ("Druckman") served as a Company director from November 2005 until his death in or around, upon information and belief, April 2018.

26.     The defendants named in ¶¶ 12-25 are sometimes referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

27.     By reason of their positions as officers, directors, and/or fiduciaries of Zion and because of their ability to control the business and corporate affairs of Zion, at all relevant times Defendants owed Zion and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage Zion in a fair, just, honest, and equitable manner.   Defendants were required to act in furtherance of the best interests of Zion and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.   Each director and officer of the Company owes to Zion and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

28.     Defendants, because of their positions of control and authority as directors and/or officers of Zion, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.   Because of their advisory, executive, managerial, and directorial positions with Zion, each Defendants had knowledge of material non-public information regarding the Company.

29.     To discharge their duties, the officers and directors of Zion were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties, the officers and directors of Zion were required to, among other things:

(a)     Exercise good faith to ensure that the affairs of the Company are conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

(b)     Exercise good faith to ensure that the Company is operated in a diligent, honest and prudent manner and complies with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority.

(c)     Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and

(d)     When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

## ZION'S CODE OF BUSINESS CONDUCT AND ETHICS

30.     Zion's Code of Business Conduct and Ethics for Directors, Officers and Employees (the "Code of Conduct") provides that the Company has adopted the Code of Conduct "to set forth the Company's standards and practices relating to the business ethics of its directors, officers and employees."

31.     The Code of Conduct provides, as to "Accuracy of Records and Public Disclosures," that:

The Company requires honest and accurate recording and reporting of information in order to make responsible business decisions and to meet its obligations to make full, fair, timely, accurate and understandable disclosure in the reports that it files with the U.S. Securities and Exchange Commission (the "SEC") and in other public communications.

This means, without limitation, that:

10

• All financial books, records and accounts clearly and accurately reflect transactions and events;
• No false or artificial entries are made in the Company's books and records (e.g., only the true and actual number of hours worked should be reported, and the use of business expense accounts must be documented and recorded accurately);
• No undisclosed or unrecorded funds or assets of the Company are established for any purpose unless permitted by applicable law or regulation;
• No payment on behalf of the Company is approved without adequate supporting documentation and when a payment is made it is used only for the purpose specified in the supporting documentation;
• There is full compliance with the Company's accounting rules and procedures and internal controls;
• No payroll related expenditures, bonuses, awards or non-cash gifts are given to or by directors, officers or employees without the proper approval and adequate documentation;
• No payments are made in cash or checks drawn to cash, except petty cash;
• No invoices are made higher or lower than normal prices at a customer's request;
• All Company funds, assets and liabilities are recorded in accordance with appropriate Company accounting procedures;
• Records are retained and destroyed according to the Company's record retention policies; and
No individual shall take any direct or indirect action fraudulently to influence, coerce, manipulate or mislead any internal accountant or auditor or the Company's independent public accountants in the performance of an internal or independent audit of the Company's financial statements or accounting books and records.

It is the Company's policy that the reports it files with the SEC and all other public communications will be full, fair, accurate, timely and understandable. The Company expects all personnel to take this responsibility very seriously, to provide prompt and accurate answers to inquiries related to the Company's public disclosure requirements, and to bring to the attention of their supervisors (a) any material information of which they become aware that affects the disclosures made by the Company and (b) any information they may have concerning significant deficiencies in the design or operation of the Company's internal controls which could adversely affect the Company's ability to record, process, summarize and report financial data.

Depending upon their positions with the Company, certain individuals may be called upon to assure that the Company's filings are complete, fair and understandable. To this end, such individuals shall:

• Comply, and, to the extent applicable, cause those under their supervision to comply, fully at all times with the Company's disclosure

controls and procedures; and
• Ensure that all reports and disclosures they prepare or review, in whole
or in part, are true and correct in all material respects and do not contain
any untrue statement of a material fact or omit to state a material fact
necessary to make the statements made, in light of the circumstances
under which they were made, not misleading.

32.    The Code of Conduct provides, as to "Compliance with Law," that:

Obeying the law, both in letter and in spirit, is paramount to the conduct of the
Company's business. Directors, officers and employees must comply, and, to the
extent applicable, ensure that employees under their supervision comply, with the
laws, rules and regulations of each city, state and country in which the Company
does business.

While the Company does not expect that all personnel will know the details of all
of these laws, it requires that they have a general understanding of the laws
applicable to their specific job responsibilities so as to enable them to determine
when to seek advice from supervisors, managers or other appropriate individuals.
To ensure that the Company's operations are conducted in compliance with all
applicable governmental regulations, directors, officers and employees must avoid
activities that could involve or lead to involvement of the Company or its
personnel in any unlawful practice.

For example, among other things, they must not, and, to the extent applicable,
must not permit the employees under their supervision to:

        • Take any unlawful or improper actions on the Company's behalf (e.g.,
          engage in conduct that is intended to mislead, manipulate or take
          unfair advantage of a collaborator or agree with representatives of
          competing companies to engage in price fixing or other illegal activities);
        • Use the assets of the Company for any unlawful or improper purpose; or
        • Directly or indirectly promise, offer or make payment in money or
          anything of value to anyone, including a government official, agent or
          employee of a government, political party, labor organization or business
          entity or a candidate of a political party, with the intent to induce
          favorable business treatment or to improperly affect business or
          government decisions.

33.    The Code of Conduct provides, as to "Violations of the Code," that:

Compliance with the Code is a condition of employment. No one has the authority
to make another person violate the Code, and any attempt to direct or otherwise
influence someone else to commit a violation is unacceptable. Failure to comply
with the Code may result in a range of disciplinary actions, including dismissal.
Any illegal activity will be dealt with swiftly and the violators will be reported to
the appropriate authorities. Directors, officers and employees are required to report

promptly any violations of the Code by others to the Code Administrator, regardless of whether such persons are their superiors, peers or subordinates. The Code Administrator, working with such advisers, including counsel to the Company, as he or she deems necessary or appropriate, will direct the investigation of any suspected violations. Failure to report, or to disclose relevant information concerning, a violation of the Code or the laws and regulations applicable to the Company and its business to the Code Administrator may be grounds for disciplinary action. Similarly, if an individual deliberately provides false information concerning a violation of the Code or the laws and regulations applicable to the Company and its business, he or she may be subject to disciplinary action. No individual should discuss instances of actual or suspected violations of the Code or criminal activity with anyone other than the Code Administrator and those persons authorized by the Code Administrator to investigate such conduct. Directors, officers and employees must not promise to refrain from reporting conduct to the Code Administrator or law enforcement authorities and must not attempt to dissuade others from reporting actual or suspected Code violations or criminal activity. An individual who is contacted by any law enforcement or other governmental agency about actual or suspected illegal activity of any kind must immediately report such contact to the Code Administrator. Directors, officers and employees are expected to cooperate in any investigation of an alleged Code violation or criminal conduct.

## FACTUAL BACKGROUND

**Background**

34.     Zion is an oil and gas exploration company with a history of over 18 years of oil and gas exploration in Israel, and currently holds one active petroleum exploration license onshore in Israel.

35.     As of June 30, 2018, the Company has no revenues from its oil and gas operations.

**The Individual Defendants Knowingly Permitted the Company to Make Materially Misleading Statements Issued During the Relevant Period**

36.     On March 12, 2018, the Company filed its annual report for the fiscal quarter and year ended December 31, 2017 on Form 10-K (the "2017 10-K") with the SEC, signed by Defendants Carrillo, Croswell, Guinn, Brown, Avery, van Brauman, Oroian, Druckman, Garb, Siegel, Scammahorn, Furnace, and Russell.

37.    The 2017 10-K states that "Zion's vision, as guided by John Brown, of finding oil and/or natural gas in Israel, is biblically inspired. The vision is based, in part, on biblical references alluding to the presence of oil and/or natural gas in territories within the State of Israel that were formerly within certain ancient biblical tribal areas."

38.    The 2017 10-K additionally commented on claims, actions, or proceedings against the Company, stating, in relevant part:

> From time to time, the Company may be subject to routine litigation, claims, or disputes in the ordinary course of business. The Company defends itself vigorously in all such matters. In the opinion of management, no pending or known threatened claims, actions or proceedings against the Company are expected to have a material adverse effect on its financial position, results of operations or cash flows. However, the Company cannot predict with certainty the outcome or effect of any such litigation or investigatory matters or any other pending litigation or claims. There can be no assurance as to the ultimate outcome of any such lawsuits and investigations.

39.    Attached to the 2017 10-K were certifications pursuant to Rule 13a-14(a) and 15d-14(a) under the Exchange Act and the Sarbanes-Oxley Act of 2002 ("SOX Certifications") signed by Defendants Carrillo and Croswell, attesting to the accuracy of the 2017 10-K.

## DEFENDANTS CAUSE THE COMPANY TO ISSUE MISLEADING STATEMENTS

40.    On March 26, 2018, a Twitter user named "FuzzyPandaShort" posted on Twitter an excerpt from a purported letter from the SEC replying to a FOIA request for "all documents in possession of [the] SEC that pertain to investigations regarding Zion Oil & Gas (ZN) for the time period January 1, 2017 through March 1, 2018."

41.    The letter also noted that the SEC was "withholding records that may be responsive to your request under 5 U.S.C. § 552(b)(7)(A), 17 CFR § 200.80(b)(7)(i).  This exemption protects from disclosure records compiled for law enforcement purposes, the release of which could reasonably be expected to interfere with enforcement activities."

42. The letter further stated that "[i]t is the general policy of the [SEC] to conduct its investigations on a non-public basis."

43. The Twitter post itself noted that "Zion has an Undisclosed SEC Investigation. Records are being withheld that could be used for law enforcement purposes."

44. The post included the following image of the letter:



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
STATION PLACE
100 F STREET, NE
WASHINGTON, DC 20549-2465

Office of FOIA Services

March 20, 2018

**Zion Oil & Gas Has an Undisclosed SEC investigation**

Re:  Freedom of Information Act (FOIA), 5 U.S.C. § 552
     Request No. 18-01306-FOIA

Dear Mr.

    This letter responds to your request, dated and received in this office on March 8, 2018, for access to all documents in possession of SEC that pertain to investigations regarding Zion Oil & Gas (ZN) for the time period January 1, 2017 through March 8, 2018. You mentioned you are specifically looking for records in possession of the SEC Enforcement Division and/or the ENF's Microcap Fraud Working Group.

    We are withholding records that may be responsive to your request under 5 U.S.C. § 552(b)(7)(A), 17 CFR § 200.80(b)(7)(i). This exemption protects from disclosure records compiled for law enforcement purposes, the release of which could reasonably be expected to interfere with enforcement activities. Since Exemption 7(A) protects the records from disclosure, we have not determined if other exemptions apply. Therefore, we reserve the right to assert other exemptions when Exemption 7(A) no longer applies.

    It is the general policy of the Commission to conduct its investigations on a non-public basis. Thus, subject to the provisions of FOIA, the Commission does not disclose the existence or non-existence of an investigation or information gathered unless made a matter of public record in proceedings brought before the Commission or in the courts. Accordingly, the assertion of this exemption should not be construed as an indication by the Commission or its staff that any violations of law have occurred with respect to any person, entity, or security.

45.     On March 27, 2018, Zion posted a response on Twitter, stating, "There is no SEC investigation.  Merely indicators of a routine FINRA questionnaire that's standard after a steep rise of our stock recently."

46.     On April 13, 2018, the Individual Defendants issued the Company's 2018 Proxy Statement with the SEC.  The 2018 Proxy Statement failed to disclose that: (1) the Company was the subject of an SEC investigation; and (2) the Company failed to maintain internal controls. The 2018 Proxy Statement was also misleading because it stated that the Code of Conduct applies to the Company's directors, officers and all employees, due to the Individual Defendants' failures to abide by it.

47.     In the proxy statement, the Board solicited shareholder votes to elect Defendants Brown, Garb, Siegel, and Croswell to new terms as directors at the Company's annual meeting to be held on June 5, 2018.

48.     On April 13, 2018, *Probes Reporter* published a report concerning SEC investigative activity concerning Zion, and *Probes Reporter*'s own FOIA request concerning Zion. The report stated, in relevant part:

> In a letter dated 06-Apr-2018, the SEC gave us a response to suggest the absence of recent SEC investigative activity at Zion Oil & Gas, Inc. This new information is contrary to a posting made to Twitter on 26-Mar-2018, by someone unknown to us [FuzzyPandaShort]. We now have conflicting FOIA responses, on the same company, received only weeks apart.

> * * *

> To us we simply have two conflict data points that require further work. Until that work is complete, there remains a cloud of uncertainty regarding the data. We have already filed an administrative appeal, the results of which should give us better answers. We will follow up when we learn more.

49.     On May 8, 2018, the Company filed its quarterly report for the fiscal quarter ended March 31, 2018 on Form 10-Q with the SEC (the "1Q 2018 10-Q"), signed by Defendants Carrillo

and Croswell.  The 1Q 2018 10-Q commented on claims, actions, or proceedings against the

Company, stating, in relevant part:

> From time to time, the Company may be subject to routine litigation, claims, or disputes in the ordinary course of business. The Company defends itself vigorously in all such matters. In the opinion of management, no pending or known threatened claims, actions or proceedings against the Company are expected to have a material adverse effect on its financial position, results of operations or cash flows. However, the Company cannot predict with certainty the outcome or effect of any such litigation or investigatory matters or any other pending litigation or claims. There can be no assurance as to the ultimate outcome of any such lawsuits and investigations.

50.     Attached to the 1Q 2018 10-Q were SOX Certifications signed by Defendants

Carrillo and Croswell, attesting to the accuracy of the 1Q 2018 10-Q.

51.     On May 30, 2018, *Probes Reporter* published an additional report on the Company,

titled, "New Data Confirms SEC Investigation at Zion Oil & Gas."  The report commented on

*Probes Reporter*'s continued communications with the SEC concerning Zion, and stated, in

relevant part:

> In a letter dated 06-Apr-2018, the SEC gave us a response to suggest the absence of recent SEC investigative activity at Zion Oil & Gas, Inc. With conflicting FOIA responses on the same company, received only weeks apart, and the company having issued a public denial, we decided it was prudent to publish the data provided to us. We did so, on 13-Apr2018. Now, in an appeal response dated 15- May-2018, on-going SEC enforcement proceedings were confirmed at Zion Oil & Gas, Inc. This has not been disclosed.

> **Our Take**: An appeal response is the gold standard when it comes to SEC FOIA responses. In this case the appeal confirmed on-going enforcement proceedings. The problem for Zion Oil & Gas is they flatly denied it back in March. We're going with the SEC on this one.

52.     On May 30, 2018, Zion made a post on Twitter denying the existence of an

investigation into the Company.  The post stated, "There is no SEC investigation into Zion Oil &

Gas, Inc.," and that the public should "[j]ust ignore such distortions."

53.    Later that same day, the Company made an additional post on Twitter, stating, "Arm yourself with good information and how to spot false rumors." The post also provided a link to an *Investopedia* article titled, "Short and Distort: Bear Market Stock Manipulation."

54.    On June 6, 2018, the Individual Defendants caused the Company to file with the SEC a Form 8-K disclosing that on the basis of the misleading proxy statement, Defendants Brown, Garb, Siegel, and Croswell were elected to new three year terms as directors. The reelection of these four Defendants was an essential link in their continued breaches of fiduciary duties detailed herein.

55.    On June 11, 2018, the *Financial Times* published an article titled, "Zion Oil: Living on a prayer," which included comments made by Defendant Carrillo and *Probes Reporter* to the *Financial Times* concerning an SEC investigation of Zion. The article stated, in relevant part:

> We asked Zion Oil about the appeal response letter which appears to indicate ongoing enforcement proceedings. Chief executive officer Victor Car[r]illo told us:
>
> "We are unaware of any SEC investigation of Zion Oil & Gas and we believe that false and malicious rumors are being spread by short-sellers interested in making a buck by seeing the stock price drop precipitously."
>
> We put that allegation to Probes Reporter, which said:
>
> "The response we have from the SEC is clear and in black & white on government letterhead. We stand fully by our report. As a long-standing practice, Probes Reporter never trades in the companies we write on."

## THE TRUTH EMERGES

56.    On July 11, 2018, the Company filed a Form 8-K with the SEC announcing it had received a subpoena from the SEC to produce documents and that the SEC was engaging in a "non-public, fact-finding inquiry into the Company." The Form 8-K stated, in relevant part:

> On Thursday, June 21, 2018, Zion Oil & Gas, Inc. ("Zion" or "Company") received a subpoena to produce documents from the Fort Worth office of the Securities and Exchange Commission ("SEC"), informing Zion of the existence

18

of a non-public, fact-finding inquiry into the Company. Zion, an SEC-reporting company with audited financial statements in the US and Israel for over a decade, will fully cooperate with this investigation. Until receipt of the subpoena on June 21, 2018, Zion had no previous communication with the SEC on this issue and was unaware of this investigation. The SEC stated that "the investigation and the subpoena do not mean that we have concluded that [Zion] or anyone else has violated the law."

While we acknowledge that our response to the subpoena will necessarily entail significant costs and management's attention, it should have no effect on Zion's ongoing testing procedures on its Megiddo-Jezreel #1 well. The Company does not intend to comment further on this matter unless in the Company's judgment, it merits further comment or public disclosure.

57.     On this news, the price per share of Zion common stock fell $0.44, or 11%, from the previous day's closing price, closing at $3.56 on July 12, 2018.

## DAMAGES TO THE COMPANY

58.     As a direct and proximate result of the Individual Defendants' conduct, Zion has been seriously harmed and will continue to be.  Such harm includes, but is not limited to:

(a)     Legal fees incurred in connection with the Securities Class Action;

(b)     Costs incurred responding to the SEC subpoena;

(c)     Any funds paid to settle the Securities Class Action; and

(d)     Excessive compensation and benefits paid to Individual Defendants who breached their fiduciary duties to the Company.

59.     In addition, Zion's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired.  The Company still has not fully admitted the nature of its false statements and the true condition of its business.  The credibility and motives of management are now in serious doubt.

60.     The actions complained of herein have irreparably damaged Zion's corporate image and goodwill.  For at least the foreseeable future, Zion will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in

19

illegal behavior and have misled the investing public, such that Zion's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

61.    Plaintiff brings this action derivatively in the right and for the benefit of Zion to redress injuries suffered, and to be suffered, by Zion as a direct result of breaches of fiduciary duty, unjust enrichment, and violations of Section 14(a) of the Exchange Act, as well as the aiding and abetting thereof, by the Individual Defendants.  Zion is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

62.    Plaintiff will adequately and fairly represent the interests of Zion in enforcing and prosecuting its rights.

63.    Plaintiff has continuously been a shareholder of Zion at all times relevant to the wrongdoing complained of and is a current Zion shareholder.

64.    When this action was filed, Zion's Board of Directors consisted of director defendants Croswell, Brown, Guinn, Garb, Siegel, Oroian, Avery, Russell, Furnace, Scammahorn, and van Brauman (collectively, the "Director Defendants") and non-party directors Virginia Prodan and John T. Seery.  Plaintiff did not make any demand on the Board to institute this action because such a demand would be a futile, wasteful, and useless act, for the reasons set forth below.

**Defendant Croswell**

65.    Defendant Croswell has served as the Company's CFO since August 2016.  Thus, as the Company admits in the 2018 Proxy Statement, Defendant Croswell is a non-independent director under the relevant listing rules and under the Company's own definition of

independence.  He receives handsome compensation, including $364,749 in 2017.  His large Company stock holding, worth almost $1.9 million before the fraud was fully exposed, reveals his interest in keeping the Company's stock price as high as possible.  As a trusted Company director and executive, he conducted little, if any, oversight of the Company's engagement in the scheme to make misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Defendant Croswell signed, and thus personally made the misleading statements in the 2017 10-K. Moreover, Croswell is a defendant in the Securities Class Action and obtained reelection to a new term as a director on the basis of the misleading proxy statement that he participated in issuing.  For these reasons, Defendant Croswell breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendant Brown**

66.    Defendant Brown is the founder of the Company and has served as a director and the Chairman of the Board since April 2000.  As the Company admits in the 2018 Proxy Statement, Defendant Brown is a non-independent director pursuant to the relevant listing rules and the Company's own definition of independence.  He receives handsome compensation, including $632,419 in 2017.  His large Company stock holding, worth over $5 million before the fraud was fully exposed, reveals his interest in keeping the Company's stock price as high as possible.  Defendant Brown signed, and thus personally made the misleading statements in, the 2017 10-K referenced herein.   Moreover, Defendant Brown obtained reelection to a new term as a director on the basis of the misleading proxy statement that he participated in issuing.  For these reasons, Defendant Brown breached his fiduciary duties, faces a substantial likelihood of

liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendant Avery**

67.     Defendant Avery has served as a Company director since September 2013, and has been retained as General Counsel on a part time basis under an independent consulting contract since December 2012.  As the Company admits in the 2018 Proxy Statement, Defendant Avery is a non-independent director under the relevant listing standards and the Company's own definition of independence.   He receives handsome compensation, including $323,687 in 2017. His large Company stock holding, worth over $3 million before the fraud was fully exposed, reveals his interest in keeping the Company's stock price as high as possible.  Defendant Avery signed, and thus personally made the misleading statements in, the 2017 10-K referenced herein. For these reasons, Defendant Avery breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendant van Brauman**

68.     Defendant van Brauman has served as a Company director since April 2014, and has served as the Corporate Secretary and Treasurer since January 2012 and as Senior Vice President since June 2013.  As the Company admits in the 2018 Proxy Statement, Defendant van Brauman is a non-independent director under the relevant listing standards and the Company's own definition of independence.   He receives handsome compensation, including $391,375 in 2017.  His large Company stock holding, worth over $1.9 million before the fraud was fully exposed, reveals his interest in keeping the Company's stock price as high as possible. Defendant van Brauman signed, and thus personally made the misleading statements in, the 2017

10-K referenced herein.  Defendant van Brauman additionally faces liability due to his issuance of the misleading proxy statement.  For these reasons, Defendant van Brauman breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendant Guinn**

69.     Defendant Guinn has served as the Company's Executive Vice Chairman since July 2016 and as the Company's President and Chief Operating Officer since September 2016. He has also served as a Company director since May 2015. Thus, as the Company admits in the 2018 Proxy Statement, Defendant Guinn is a non-independent director under the relevant listing standards and the Company's own definition of independence.   He receives handsome compensation, including $465,647 in 2017.  His large Company stock holding, worth over $1.5 million before the fraud was fully exposed, reveals his interest in keeping the Company's stock price as high as possible. Defendant Guinn signed, and thus personally made the misleading statements in, the 2017 10-K referenced herein.  Defendant Guinn additionally faces liability due to his issuance of the misleading proxy statement.  For these reasons, Defendant Guinn breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendant Russell**

70.     Defendant Russell has served as a Company director since May 2017, and has served as an independent Geoscience Consultant with the Company since August 2012.  He receives handsome compensation, including $253,638 in 2017.  His large Company stock holding, worth over $1.3 million before the fraud was fully exposed, reveals his interest in keeping the Company's stock price as high as possible.  Defendant Russell signed, and thus

personally made the misleading statements in, the 2017 10-K referenced herein. Defendant Russell additionally faces liability due to his issuance of the misleading proxy statement. For these reasons, Defendant Russell breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendant Garb**

71.     Defendant Garb has served as a Company director since November 2005, and serves as Chairman of the Compensation Committee. His large Company stock holding, worth over $1.3 million before the fraud was fully exposed, reveals his interest in keeping the Company's stock price as high as possible. Defendant Garb signed, and thus personally made the misleading statements in, the 2017 10-K referenced herein. Moreover, Defendant Garb obtained reelection to a new term as a director on the basis of the misleading proxy statement that he participated in issuing. For these reasons, Defendant Garb breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.


**Defendant Siegel**

72.     Defendant Siegel has served as a Company director since January 2013, and serves as a member of the Audit Committee and the Compensation Committee. His large Company stock holding, worth over $1.2 million before the fraud was fully exposed, reveals his interest in keeping the Company's stock price as high as possible. Defendant Siegel signed, and thus personally made the misleading statements in, the 2017 10-K referenced herein. Moreover, Defendant Siegal obtained reelection to a new term as a director on the basis of the misleading

proxy statement that he participated in issuing.  For these reasons, Defendant Siegel breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendant Oroian**

73.     Defendant Oroian has served as a Company director since November 2003 and serves as the Board's Lead Independent Director.  He also serves as Chairman of the Audit Committee and as a member of the Nominating and Corporate Governance Committee.  His large Company stock holding, worth over $1.4 million before the fraud was fully exposed, reveals his interest in keeping the Company's stock price as high as possible.  Defendant Oroian signed, and thus personally made the misleading statements in, the 2017 10-K referenced herein. Defendant Oroian additionally faces liability due to his issuance of the misleading proxy statement.  For these reasons, Defendant Oroian breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendant Furnace**

74.     Defendant Furnace has served as a Company director since April 2012, and serves as the Chairman of the Nominating and Corporate Governance Committee and as a member of the Compensation Committee.  His large Company stock holding, worth almost $1.1 million before the fraud was fully exposed, reveals his interest in keeping the Company's stock price as high as possible.  Defendant Furnace signed, and thus personally made the misleading statements in, the 2017 10-K referenced herein.  Defendant Furnace additionally faces liability due to his issuance of the misleading proxy statement.  For these reasons, Defendant Furnace

breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendant Scammahorn**

75.     Defendant Scammahorn has served as a Company director since October 2012, and serves as a member of the Nominating and Corporate Governance Committee and as a member of the Audit Committee.  His large Company stock holding, worth almost $1.1 million before the fraud was fully exposed, reveals his interest in keeping the Company's stock price as high as possible.  Defendant Scammahorn signed, and thus personally made the misleading statements in, the 2017 10-K referenced herein.  Defendant Scammahorn additionally faces liability due to his issuance of the misleading proxy statement.  Thus, for these reasons, too, Defendant Scammahorn breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Director Defendants**

76.     Demand in this case is excused because the Directors, 11 of whom are named as defendants in this action, and one of whom is a defendant in the Securities Class Action, control the Company and are beholden to each other.  The Directors have longstanding business and personal relationships with each other and the other Individual Defendants that preclude them from acting independently and in the best interests of the Company and the shareholders.  These conflicts of interest precluded the Director Defendants from adequately monitoring the Company's operations and internal controls and calling into question the Individual Defendants' conduct. Thus, any demand on the Directors would be futile.

77.     In violation of the Code of Conduct, the Director Defendants issued materially misleading statements to the public, and facilitated and disguised the Individual Defendants'

violations of law, including breaches of fiduciary duty, unjust enrichment, and violations of Section 14(a) of the Exchange Act.  In violation of the Code of Conduct, the Director Defendants failed to comply with the law.  Thus, the Directors face a substantial likelihood of liability and demand is futile as to them.

78.    Zion has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Directors have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Zion any part of the damages Zion suffered and will continue to suffer thereby.  Thus, any demand upon the Board would be futile.

79.    The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct.  As a majority of the Directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company.  Accordingly, demand is excused as being futile.

80.    For all of the reasons set forth above, a majority of the Board cannot consider a demand with disinterestedness and independence.  Consequently, a demand upon the Board is excused as futile.

**FIRST COUNT**
**Against Individual Defendants for Violations of**
**Section 14(a) of the Securities Exchange Act of 1934**

81.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

82.     Rule 14a-9, promulgated pursuant to §14(a) of the Securities Exchange Act of 1934, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."   17 C.F.R. §240.14a-9.   Specifically, the Company's proxy statement filed April 13, 2018 violated §14(a) and Rule 14a-9 because it: (i) misrepresented the Board's actual activities with respect to risk management and compliance with the Company's code of conduct while soliciting votes to reelect directors who were breaching their fiduciary duties; (ii) failed to disclose that the Company was the subject of an SEC investigation and had issued misleading statements denying same.

83.     In the exercise of reasonable care, Defendants should have known that the statements contained in the proxy statement were materially false and misleading.

84.     The misrepresentations and omissions in the proxy statement were material to Company shareholders in voting on the proxy statement.   The 2018 proxy statement solicited and obtained shareholder votes to reelect four Defendants who were breaching their fiduciary duties. The proxy statement was an essential link in the accomplishment of the continuation of Defendants' continued violation of their fiduciary duties.

85.     The Company was damaged as a result of Defendants' material misrepresentations and omissions in the proxy statement.

## SECOND COUNT
### Against the Individual Defendants for Breach of Fiduciary Duty

28

86.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

87.   Each Individual Defendant owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Zion's business and affairs, particularly with respect to issues as fundamental as public disclosures.

88.   The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company.  The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Zion.

89.   In breach of their fiduciary duties owed to Juno, the Individual Defendants willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

90.   In particular, the Individual Defendants knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly represent that the Company was not the subject of an SEC investigation when in fact it was.

91.   The Individual Defendants, as directors and officers of the Company, owed Zion the highest duty of loyalty.  The Individual Defendants knowingly or recklessly breached their duty of loyalty by allowing their fellow Defendants to profit from undisclosed negative information by conferring incentive compensation on their fellow Defendants who were breaching their fiduciary duties, and by failing to hold their fellow defendants to account for their wrongdoing

92.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Zion has sustained and continues to sustain significant damages.  Including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets.  As a result of the misconduct alleged herein, Defendants are liable to the Company.

93.     Plaintiff on behalf of Zion has no adequate remedy at law.

### THIRD CLAIM
### Against Individual Defendants for Unjust Enrichment

94.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

95.     By their wrongful acts, violations of law, and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Zion.

96.     The Individual Defendants received bonuses, stock options, or similar compensation from Zion that was tied to the performance or artificially inflated valuation of Zion, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

97.     Plaintiff, as a shareholder and a representative of Zion, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, including from insider transactions, excessive compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

98.     Plaintiff on behalf of Zion has no adequate remedy at law.

### PRAYER FOR RELIEF

FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

A.      Declaring that plaintiff may maintain this action on behalf of Zion and that plaintiff is an adequate representative of the Company;

B.      Declaring that Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Zion;

C.      Determining and awarding to Zion the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

D.      Directing Zion to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Zion and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote the following corporate governance policies:

1.      a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

2.      a provision to permit the stockholders of Zion to nominate at least seven candidates for election to the Board; and

3.      a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations;

E.      Awarding to Zion restitution from Defendants, and each of them, and ordering

disgorgement of all profits, benefits, and other compensation obtained by Defendants;

F.      Awarding to Plaintiff the costs and disbursements of the action, including

reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

G.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.


Dated: November 1, 2018                    Respectfully submitted,

Of Counsel:                                **FARNAN LLP**

                                           /s/ Brian E. Farnan
Matthew M. Houston                         Brian E. Farnan (Bar No. 4089)
Benjamin I. Sachs-Michaels                 Michael J. Farnan (Bar No. 5165)
GLANCY  PRONGAY  &  MURRAY  LLP            919 N. Market St., 12th Floor
712 Fifth Avenue                           Wilmington, DE 19801
New York, NY 10019                         Telephone: (302) 777-0300
Telephone: (212) 935-7400                  Facsimile: (302) 777-0301
                                           Email: bfarnan@farnanlaw.com
Robert V. Prongay                          Email: mfarnan@farnanlaw.com
Lesley F. Portnoy
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East
Los Angeles, CA 90067
Telephone: (310) 201-9150

                                           *Attorneys for Plaintiff*